STATE *ex rel.* ALEX BLACKBURN *et al.*, Respondents, v. THOMAS A. SMITH *et al.*, Appellants.

64 313
d84 143

Kansas City Court of Appeals, January 6, 1896.

1. **Definitions**: RESIDENCE: DOMICILE. The term residence has no fixed meaning applicable alike to all cases. It is not the synonym of domicile, which is residence with intention; but no length of residence without intention will constitute domicile.

2. **Schools**: ENUMERATION: HOW TAKEN. The enumerator, under section 7999, Revised Statutes, 1889, is not required to follow up those who have apparently moved from the district and get their secret intentions, nor to investigate the antecedent movements and present intentions of those apparently residents in the district, but in determining who resides in the district must necessarily be guided by the usual and ordinary *indicia* of residence, and the enumeration is not to be condemned because of the secret mental resolves or concealed intentions of persons living, or having lived, in the district.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED.

STATEMENT OF THE CASE BY GILL, JUDGE.

This is a mandamus proceeding, begun in October,
1894, the purpose of which was to compel defendants,
as directors of Houstonia school district in Pettis
county, Missouri, to place the names of Henry Rhodes'
children upon the enumeration list of school children
of said district for the year 1894, and to compel defend-
ants, as such directors, to establish a school in said dis-
trict for colored children, for the year beginning in the
fall of 1894; relators alleging and contending that said
Rhodes and his four children, between the ages of six
and twenty years, were colored people of African
descent, and were, at the time of taking the enumera-
tion of school children for said year, residents of said
district, and entitled to be enumerated in said dis-
trict, and that it was the duty of defendants to have
caused said children's names to be placed on the enu-
meration list; but that said children's names had been
wrongfully omitted from the list, by reason of which it
was made to appear from said enumeration that there
were less than fifteen colored children in said district,
at that time; and for that reason, that defendants had
failed to establish any colored school in said district
for that year.    Plaintiffs allege that if the children
of said Rhodes had been enumerated, there would have
been fifteen colored children in said district at that
time.

Defendants contend that said Rhodes and his
children were not residents within said district at the
time of taking such enumeration, and that such chil-

dren's names were properly omitted from the said enumeration list.

At the beginning of the trial below, it was agreed in open court that if Henry Rhodes was not a resident of the school district of Houstonia, between the thirtieth day of April, 1894, and the fifteenth day of May, 1894, within the meaning of the law, then there were not fifteen colored children in the district in question; and that, if he was a resident, then there were fifteen colored children in the district in question; and that the controversy in this case depends on whether the said children of Rhodes were residents in this district at the time above mentioned.

The evidence shows substantially the following state of facts: Henry Rhodes, colored, on the twenty-first day of March, 1894, owned a house in Houstonia, where he had resided up to that time for several years. That he had previously sent his children to said Houstonia school, though, at times, they did not attend. On said twenty-first day of March, he removed from said house with his family to the farm of Judge Higgins, outside of the district, taking his household furniture with him, except a bed and a few tools. He rented the house for a month. It then remained vacant until later in the season, when it was rented again.

At the time the enumeration was taken, it was vacant and locked up, and if there was any furniture in it the same could not be discovered from the outside. Mr. Rhodes testified that his intention in moving to Judge Higgins' farm, was to work for him, to plant a crop and stay until the corn was laid by, and get back home to send his children to school. That he first made an arrangement for one month, under an agreement that if Higgins liked him he was to stay until the crop was laid by. That he still

lived at Higgins' when this trial was had in October. That he did not come back to Houstonia, because he learned they were going to have no school there. That he intended, if they started a school, to move his children back and he would go back in the country and go to work. As it was, they had no school and he did not move back. That he told certain other colored people of his intention, but did not so inform these defendants, and there is no evidence that they had any such information at the time of taking the enumeration. During the early part of May, one Nichols, clerk of the district, under the order of the board, took the enumeration, and while taking such enumeration he called at the house where Rhodes had formerly resided and found no one there. That he rattled at the door and found it locked and no one within; that he made inquiry and a neighbor residing in an adjoining house informed Mr. Nichols that the Rhodes family had moved out of the district. He had no information as to any intention on the part of Rhodes to return. He therefore did not place the names of the Rhodes children on the enumeration list. The enumeration failed to show fifteen colored children of school age, and no colored school was provided for that year.

The alternative writ of mandamus was made peremptory and defendants have appealed.

The foregoing is taken largely from defendant's brief. On a careful examination of the record, we find it a very fair statement of the case.

*Thos. P. Hoy* and *G. W. Barnett* for appellants.

(1) The writ will not lie, unless the relator shows a clear right to have the thing done which he asks for. See Merrill on Mandamus, sec. 56, page 62, and au-

thorities there cited. *State ex rel. v. Buhler*, 90 Mo. 560. (2) The defendants were not required to establish a colored school, unless it appeared from the enumeration that fifteen colored children were in the district. See Revised Statutes of 1889, sec. 8003. And the defendants were not guilty of any omission of duty in not causing the names of the Rhodes children to be placed upon the enumeration list. (3) There is a marked distinction between domicile and residence, as residence is here used. Rhodes may have retained his domicile in Houstonia but resided elsewhere. *Alston v. Newcomer*, 42 Miss. 186; *Stout v. Leonard*, 37 N. J. L. 492. The term residence has no fixed meaning applicable to all cases. See 21 Am. and Eng. Encyclopedia of Law, p. 122, note 1, and authorities there cited. The sense in which the word residents is used in section 7999 is that of children actually residing in the district between April 30 and May 15 so that they can be found within the district and counted or enumerated. It is an actual, as distinguished from constructive, residence.

*E. J. Smith* for respondents.

The whole question here turns on whether or not the four children of Henry Rhodes should have been enumerated in the Houstonia district or not. We say they should. The board of education, or directors, shall, between April 30 and May 15, enumerate all the children of school age "resident" within the district. R. S., sec. 7999. If there are fifteen or more colored children "as shown by the last enumeration" they shall cause to be taught a school for colored children. R. S., sec. 8003.

GILL, J.—The school law of Missouri requires the establishment and maintenance of separate free schools for colored children. R. S. 1889, secs. 7999, 8002, 8003.

It is made the duty of the school board of each district, "when there are within any school district in this state fifteen or more colored children of school age, as shown by the last enumeration, *** to establish and maintain, within such school district, a separate free school for said colored children," having the same length of term, privileges, and advantages as are provided for white children.   R. S., sec. 8003. The enumeration here suggested, and which must determine the action of the school board, is provided for in section 7999.   It reads:  "The school board of each district shall, between the thirtieth day of April and the fifteenth day of May of each year, take, or cause to be taken and forwarded to the county clerk, an enumeration of the names of all persons over six and under twenty years of age, resident within the district, designating male and female, white and colored, and age of each, together with the full name of the parent or guardian of each child enumerated***; and any parent or guardian who shall knowingly furnish to any enumerator the name of any child who is under six or over twenty years of age, or who is a nonresident of the district, shall be guilty of a misdemeanor," etc.

Now, the vital question here is, were the Rhodes children, within the meaning of this statute, *residing* in the Houstonia district, on May 2, 1894, when the clerk of the school board made the enumeration for that year.   In other words, did Mr. Nichols, the clerk acting for the school board, make and return at that time, a false enumeration, in the meaning of the above statute?   We think he did not.   In our opinion, Rhodes and his family were not then, within the meaning of the school law, *residents* of the Houstonia district.

Rhodes had, prior thereto, moved out of that school district, and was, for school purposes, residing

in another and different district. It matters not that he contemplated a return within a few months, a year, or a number of years. It was enough that when the enumerator went to his former abode, he had gone— had moved with his family to another district—had abandoned his former dwelling, leaving same vacant and unoccupied, with no advice to the enumerator, or the school board, that he, Rhodes, intended to return at all.

The term "residence" has no fixed meaning applicable alike to all cases. It must be understood differently, according to a number of varied conditions. In some instances it is regarded as synonymous with "domicile;" but they are not, in all cases, to be treated as convertible terms. It is said that domicile is residence combined with intention. It has been well defined to be residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. A man can have but one domicile, for one and the same purpose, at any one time, though he may have numerous places of residence. His place of residence may be, and most generally is, his place of domicile, but it obviously is not by any means necessarily so, for no length of residence, without the intention of remaining, will constitute domicile. In common language, it is not more usual than correct to say that a person resides in the city during the winter and in the country during the summer. *Stout v. Leonard*, 37 N. J. L. 492; Jacob's Law of Domicile, sec. 73, *et seq.*

The "residence" of the school statute, from which we have quoted, is not the synonym of domicile. The context clearly shows that the term resident was not so used by the legislature. The statute makes it the duty of the enumerator to go about the district and get from parents or guardians the names of each and

every child of school age therein residing, and he is required to accompany this report, containing the individual names of the children, "with the full name of the parent or guardian of each of such children, so enumerated," and punishment is provided for any parent or guardian who shall give false information to the enumerator. How, now, could the enumerator get this information, and cast the responsibility where it belongs, except by a personal interview with the parent or guardian? And this would require the presence in the district of such parent or guardian. It is not to be expected that the enumerator will follow up those who have apparently moved from the district and get from them their secret intentions as to whether or not they have permanently abandoned their former abode. Neither is it incumbent on such enumerator to investigate the antecedent movements and present intentions of those apparently resident in the district and determine whether or not such persons do or do not intend to remain; or whether or not said persons are only temporary residents. In determining who resides in its district, the school board, or the person by it engaged to make the enumeration, must necessarily be guided by the usual and ordinary *indicia* of residence, or absence of such indications; and the enumeration is not to be condemned because of certain secret mental resolves, or concealed intentions of persons living or having lived, in the district. These remarks apply to the facts of this case. On the face of things, Rhodes had left the school district; had taken his family and household goods and moved to another; and for what length of time he was to remain, if, indeed, he was ever to return, was not known to the school board, or to the enumerator. The board had the clear right, it was its duty, to act on these manifest appearances and

treat Rhodes and his children as nonresidents of that school district.

The purpose the statute has in requiring an enumeration is to determine the children present in the district, so as to make the necessary provisions as to teachers, schoolhouses, etc., for the approaching scholastic term. This necessarily excludes any consideration of those absent from the district who may be residing elsewhere and who, the act assumes, will not attend the school terms about to begin.

We hold, then, with the defendant's contention, that the Rhodes children were not, at the date of the enumeration of 1894, *residents* within the Houstonia school district, as that term is used and intended in section 7999 of the Revised Statutes; they were not *within* that district between April 30 and May 15, 1894, as required by section 8003, so as to entitle them to be counted and enumerated, and hence the judgment rendered below in plaintiff's favor should be reversed. It is so ordered.   All concur.